MARK B. HANSON, ESQ.
First Floor, Macaranas Building
PMB 738 P.O. Box 10,000
Saipan, Mariana Islands 96950
Telephone:    (670) 233-8600
Facsimile:    (670) 233-5262

Attorney for *Defendant Lionel Borja*

F I L E D
Clerk
District Court

SEP 2 0 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 03-00001-003 |
| Plaintiff, | |
| vs. | SENTENCING MEMORANDUM |
| LIONEL BORJA, | |
| Defendants. | Date:  September 22, 2005 |
| | Time:  10:00 a.m. |
| | Judge: Hon. Alex R. Munson |

Defendant Lionel Borja, through his appointed counsel, Mark B. Hanson, hereby files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

Here, the Government has filed a motion pursuant to 18 U.S.C. § 3553(e) and §5K1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Federal Sentencing Guidelines"), based on Lionel Borja's substantial cooperation in the investigation and prosecution of the City Trust Bank robbery and other criminal activity.  If the Court grants the Government's motion, under § 3553(e) and §5K1.1, applying the sets of factors espoused therein and discussed below, this Court may impose on Mr. Borja any sentence this Court believes is fair and just under the circumstances of Mr. Borja's case.

Based on Lionel Borja's substantial cooperation with federal and local authorities, his relatively

ORIGINAL

1   brief involvement in criminal activity and drug abuse, the outstanding prospects for Lionel Borja's

2   rehabilitation and reintegration into this community, the continued support of his family and friends,

3   and the maturity and acceptance of responsibility Mr. Borja has demonstrated in the last two and one

4   half years in which he has been incarcerated awaiting sentencing in this matter, all of which is discuss

5   below, the undersigned, on behalf of Lionel Borja, respectfully requests that the Court grant the

6   Government's motion and make a substantial downward departure from the guidelines, including

7   the mandatory minimum consecutive sentence that would otherwise be imposed in this case.

8        The Government, in its motion, refers to the guidelines range (an offense level of 26 with a

9   Criminal History Category I) that the parties, through Mr. Borja's plea agreement, agreed would form

10  the basis from which the Court would depart if the Court were to grant the Government's motions.

11  The Government's motion goes on to recommend to that the Court sentence Mr. Borja to the

12  bottom of the range suggested by the Sentencing Table of the Federal Sentencing Guidelines (63

13  months).  However, it was always the understanding of the parties that the Court, in its discretion,

14  could further depart from the offense level of 26 should the Court, in its review and consideration

15  of the relevant departure factors, determine that a departure was warranted.  As discussed below,

16  neither § 3553(e) nor § 5K1.1 limits such discretion of the Court; to the contrary, they give the Court

17  such discretion.

18       Accordingly, and for the reasons discussed below, supported by the letters attached hereto

19  which should already be in the Court's files, Defendant Lionel Borja is requesting herein that the

20  Court further depart, downward, from the guidelines offense level of 26 by 6 levels and sentencing

21  Lionel Borja to 33 months at a total offense level of 20.

22                   **Sentencing Factors and Sentencing under _Booker_**

23       On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in _Blakely_

24  _v. Washington_, 124 S. Ct. 2531 (2004) and _Apprendi v. New Jersey_, 530 U.S. 466 (2000) applies to the

25  Federal Sentencing Guidelines.  _United States v. Booker_, 125 S. Ct. 738, 756 (2005).  Given the

26

27

1  mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between

2  the sentence imposed pursuant to the Washington statutes in *Blakely* and the sentences imposed

3  pursuant to the Federal Sentencing Guidelines" in the cases before the Court. *Id.* at 751.

4  Accordingly, reaffirming its holding in *Apprendi*, the Court concluded that

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.
> *Id.* at 756.[1]

8  Based on this conclusion, the Court further found those provisions of the federal Sentencing

9  Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon

10  the Guidelines's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment

11  holding. *Booker*, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions,

12  "mak[ing] the Guidelines effectively advisory." *Id.* at 757.

13  Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised

14  by *Booker*, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4)

15  (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as

16  well, see § 3553(a). *Booker*, 125 S. Ct. at 757. Thus, under *Booker*, sentencing courts must treat the

17  guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

18  The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence

19  sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."

20  Section 3553(a)(2) states that such purposes are:

---

[1] It should be noted that the fact-of-prior-conviction exception to the *Apprendi* rule is based on *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). But the continued vitality of this case and the exception it created has been called into question not only by the broad reasoning of *Booker* itself, which would seem to apply to all enhancement facts, including facts of prior conviction, but also more recently by *Shepard v. United States*, 125 S. Ct. 1254 (2005). *Shepard* sharply limits the *Almendarez-Torres* exception to the fact of prior conviction as determined by the judicial record, and excludes facts about the conviction which are not contained in such conclusive records. As Justice Thomas notes, moreover, five justices agree that *Almendarez-Torres* was wrongly decided. 125 S. Ct. at 1264 (Thomas, J., concurring).

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1));

2) "the kinds of sentences available" (§ 3553(a)(3));

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§3553(a)(6)); and

4) "the need to provide restitution to any victims of the offense." (§3553(a)(7)).

Other statutory sections also give the district court direction in sentencing.

Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation:  in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added).  This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or

1    alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1. *See also United States v.*

2    *Fagan*, 162 F.3d 1280, 1284-85 (10th Cir. 1998)(because guidelines do not expressly forbid the

3    departure, court may downward depart where defendant showed great remorse "to an exceptional

4    degree" even though the defendant already received adjustment for acceptance of responsibility);

5    *United States v. Farrier*, 948 F.2d 1125, 1127 (9th Cir. 1991) (admission of guilt to other crimes can

6    justify departure under §5K2.0, but not further adjustment for acceptance); *United States v.*

7    *Jaroszenko*, 92 F.3d 486 (7th Cir. 1996) exemplary conduct in prison may be basis for downward

8    departure in manufacturing 4,000 marijuana plant case, and no abuse to depart downward 11 levels

9    and re-sentence defendant to 30 days – no difference between post-offense and post-sentencing

10   rehabilitation – court need not analogize to comparable guideline provisions to explain extent of

11   departure so long as reasonable); *United States v. Bradstreet*, 207 F.3d 76 (1st Cr. 2000) (departure

12   from 51 to 31 months at re-sentencing in securities fraud case not abuse of discretion for post-offense

13   rehabilitation while in prison D tutored inmates, taught adult that he developed, volunteered and

14   succeeded in the prison's Boot Camp Program, began serving as the prison chaplain's assistant,

15   became a program assistant and clerk of the prison parenting program, and lectured at local colleges

16   to business students on ethical perils in the business world and where appended to the motion were

17   letters of commendation from people with whom he had worked in prison as well as from several of

18   the inmates whom he had assisted.).

19       The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply

20   the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority

21   in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial

22   majority in *Booker*, directing courts to consider all of the § 3553(a) factors, many of which the

23   guidelines either reject or ignore." *United States v. Ranum*, 353 F. Supp. 2d 984, 985-86 (E.D. Wis.

24   Jan. 19, 2005). As another district court judge has correctly observed, any approach which

25   automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory

26

27

1  regime found to be constitutionally infirm in *Booker*." *United States v. Jaber*, __ F. Supp. 2d __, 2005

2  WL 605787 *4 (D. Mass. March 16, 2005). *See also United States v. Ameline*, 400 F.3d 646, 655-56

3  (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge

4  must consider in determining an appropriate individualized sentence"), *reh'g en banc granted*, 401

5  F.3d 1007 (9th Cir. 2005).

6      Justice Scalia explains the point well in his dissent from *Booker's* remedial holding:

7          Thus, logic compels the conclusion that the sentencing judge, after considering
   the recited factors (including the guidelines), has full discretion, as full as what he
8  possessed before the Act was passed, to sentence anywhere within the statutory range.
   If the majority thought otherwise – if it thought the Guidelines not only had to be
9  'considered' (as the amputated statute requires) but had generally to be followed – its
   opinion would surely say so.
10

11  *Booker*, 125 S. Ct. at 791 (Scalia, J., dissenting in part).

12      Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its

13  opinion would have said so. The remedial majority clearly understood that giving any special weight

14  to the guideline range relative to the other Section 3553(a) factors would violate the Sixth

15  Amendment.

16      In sum, in every case, a sentencing court must now consider *all* of the § 3553(a) factors, not

17  just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet

18  the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in

19  § 3553(a), these statutory sentencing factors should generally trump the guidelines. *See United*

20  *States v. Denardi*, 892 F.2d 269, 276-77 (3rd Cir. 1989) (Becker, J, concurring in part, dissenting in

21  part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four

22  purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates

23  statute and is reversible, even if within guideline range).

24        **Governments' Motions under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1**

25      Here, pursuant to the cooperation agreement under which the Defendant pled, the

26  Government has filed or will soon file a motion under 18 U.S.C. § 3553(e) and § 5K1.1 of the Federal

27

Sentencing Guidelines.  Title 18 U.S.C. § 3553(e) states:

> Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.  Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.[2]

Section 3553(e) does not mandate any particular departure point or require that the ultimate sentence imposed fall within the otherwise applicable guideline range.  *See, e.g., United States v. Auld*, 321 F.3d 861, 864 (9th Cir. March 3, 2003) (citing *United States v. Pillow*, 191 F.3d 403, 407 (4th Cir. 1999) ("That the resulting 'sentence' [after a § 3553(e) departure] must be imposed in accordance with the Sentencing Guidelines and policy statements . . . simply means that the district court's discretion in choosing a sentence after the Government moves to depart below the statutorily required minimum sentence is constrained by the Sentencing Guidelines and policy statements.  Specifically, the district court should use the factors listed in § 5K1.1(a)(1)-(5) as its guide when it selects a sentence below the statutorily required minimum sentence.")).

The Federal Sentencing Guidelines incorporates a policy statement regarding motions under § 3553(e) into U.S.S.G. § 5K1.1 providing for a further departure from the guidelines themselves and enumerating a separate set of factors under which to evaluate downward departures for a defendant's substantial assistance under both § 3553(e) and §5K1.1.

Section 5K1.1 of the Federal Sentencing Guidelines states:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> (a) The appropriate reduction shall be determined by the court for reasons that may include, but are not limited to, consideration of the following:

---

[2]  Section 994(n) charges the Sentencing Commission with "assur[ing] that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from h is assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. §5K1.1 (2004).

"The § 5K1.1(a) list is non-exhaustive, and a district court may consider other factors bearing on the quality of the assistance provided." *United States v. Auld*, 321 F.3d 861, 867 (9th Cir. 2003). The application notes of the commentary to §5K1.1 also clarify that the sentencing reduction for assistance to authorizes shall be considered independently of any reduction for acceptance of responsibility. U.S.S.G. §5K1.1, App. Note 2. "Substantial assistance is directed to the investigation and prosecution of criminal activities by persons other than the defendant, while acceptance of responsibility is directed to the defendant's affirmative recognition of responsibility for his own conduct." *Id.*

The net effect where substantial assistance is provided by a defendant and where the government files a motion under § 3553(e) and § 5K1.1 is that the Court is relieved of the restrictions of any mandatory statutory minimum sentence and from the sentencing ranges of the Federal Sentencing Guidelines themselves. The Court is free to tailor the sentence of cooperating defendant to reflect the nature and circumstances of the case, the personal history and characteristics of the defendant (§ 3553(a) factors), and that incorporates a recognition of the defendant's substantial assistance in the prosecution of other offenders (§ 5K1.1 factors).

### Application of the Statutory Sentencing Factors to the Facts of this Case

In the present case, the following factors must be considered when determining what type and

length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1.    The Nature and Circumstances of the Offense and the History and Characteristics of the Offender:

(a) *Nature and Circumstances of Offense*: There is no doubt that the circumstances of the offense admittedly committed by the Defendant in this case are grave.  Defendant, while high on "ice," participated in the robbery of City Trust Bank where a co-conspirator discharged a firearm (Pre-Sentence Investigation Report ("PSIR") ¶ 77).  While no one was injured (PSIR ¶¶ 28-31 (Victim Impact Statement)) and the benefit acquired by Defendant from the robbery was nominal (PSIR ¶ 26 (Borja did not keep any of the money from the robbery)), the Court should not overlook the reality of the crimes committed.  However, as recognized by former Assistant United States Attorney Patrick Smith, "Mr. Borja's early and complete cooperation" is an undeniable mitigating factor in this case.

(b) *History and Characteristics of Lionel Borja*: As detailed in Part C of the Probation Office's PSIR, Defendant Borja is a high school graduate from a broken home that fell in with the wrong crowed early in his adult life.  Defendant Borja has repeatedly acknowledged the regrettable, detrimental effect his becoming a "beach boy" had on what was, for the most part, an incident-free childhood. *See* PSIR ¶¶ 65-66.  What is clear from the PSIR and the letters written in support of Mr. Borja's sentencing is the fact that, when away from the corrupting influence of Saipan "beach boys," Mr. Borja's behavior and attitude are substantially different than that reflected in the PSIR detailing the period from about March 2001 until the time of Defendant's cooperation with the United States Attorney, the Federal Bureau of Investigation and the CNMI Criminal Investigation Bureau in December 2002. *See* PSIR ¶¶ 66 (Borja started hanging out with Kapileo brothers in March 2001); 69-70 (Borja's pre-offense and post-offense behavior suggest an aberrational period of criminal behavior and substance abuse); 76-77 (abused the substance known as "ice" from about April 2001 to the beginning of his cooperation with the Government in December 2002); 78 (Borja graduated high school); and 16 & 79 (during his pre-sentencing detention of over 31 months, Borja has shown

1   that he has the attitude, temperament, desire and ability to continue his rehabilitation and to

2   become a productive member of society.  *See also* Letter from Thomas SA Chaco, Corrections

3   Officer I, dated September 5, 2005: "[Mr. Borja] is considered by this officer to be a role model for

4   the other inmates/detainees to emulate while incarcerated."

5   2.    The Need for the Sentence Imposed To Promote Certain Statutory Objectives:

6        Among the other statutory objectives identified above, Mr. Borja's sentence here should

7   accomplish the objective of protecting the public from further crimes of the defendant and provide

8   the defendant with needed educational or vocational training, medical care, or other correctional

9   treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).

10       First, as noted in the PSIR at ¶ 16, Defendant Borja's exceptional behavior over the last two

11  and one half years of detention is a strong indicator that Mr. Borja is unlikely to commit further

12  crimes.  As highlighted herein, Mr. Borja's problems stemmed from his association with career

13  criminals in Saipan; prolonged incarceration in a Bureau of Prisons facility can only have a negative

14  impact on Mr. Borja's marked rehabilitation.  As noted by Corrections Officer Chaco in his letter to

15  the Court, "Detainee Lionel Borja does not pose a security risk and [Officer Cacaho] would strongly

16  support the leniency of this court during his sentencing . . . ."  Letter from Thomas SA Chaco,

17  Corrections Officer I, dated September 5, 2005.

18       Further, as identified in the PSIR, Defendant Borja has been in custody for over 31 months

19  awaiting sentencing.  In that time, Mr. Borja has demonstrated an honest and substantial effort

20  towards rehabilitation.  *See* PSIR 16.  In detention in Guam, Mr. Borja was involved with

21  opportunities that provided him with trade skill experience, and gained valuable experience with

22  computers and performing clerical skills in the facility's Operations Office.  *See, e.g.,* Letter from

23  Thomas SA Chaco, Corrections Officer I, dated September 5, 2005.  Mr. Borja has had this

24  opportunity in large part because he has been at a smaller facility in Guam awaiting sentencing and

25  he has not yet been placed in the Bureau of Prison's system where such institutionalization will likely

26

27

have a substantially less rehabilitative impact. *See, e.g., United States v. Parella*, 273 F. Supp. 2d 161 (D. Mass. 2003) (where defendant convicted of being getaway driver in three bank robberies, court departs from 30-37 months to probation because defendant "totally changed his life and his behavior" and treatment was successful "a rehabilitated defendant is not likely to be a recidivist"); *United States v. Blake*, 89 F. Supp.2d 328 (E.D.N.Y. 2000) (in bank robbery, departure from level 29 to level 8 and probation proper in part because incarcerating defendant would "reverse the progress she has made" and considering the decreasing opportunities for rehabilitation in federal prisons resulting from ever-increasing prison populations); *United States v. Sally*, 116 F.3d 76 (3rd Cir. 1977) (a defendant's post-conviction rehabilitation efforts may be sufficient to warrant a downward departure where defendant is resentenced several years later if there is at least "concrete gains toward turning ones' life around." Here, defendant was 17 when convicted of crack and gun charges and has since earned his GED and nine college credits); *United States v. Griffiths*, 954 F. Supp. 738 (D. Vt. 1997) (13-level downward departure granted on basis of defendant's extraordinary rehabilitative efforts after defendant overcame drug use, left his former lifestyle entirely behind him, and became involved in program for children; defendant's progress would be utterly frustrated if defendant were incarcerated).

3.    The Kinds of Sentences Available: As discussed above, the Government's motion under 18 U.S.C. § 3553(e) relieves the Court from the mandatory minimum otherwise applicable in this case, and the Government's motion under U.S.S.G. § 5K1.1 gives the Court full discretion to sentence Defendant based on his substantial assistance in light of the factors espoused in § 5K1.1.

4.    The Sentencing Range Established by the Sentencing Commission: Initially, the PSIR properly places Defendant in Criminal History Category I.

As the parties agreed in the Plea Agreement accepted by the Court, and as detailed in the PSIR, the applicable guidelines range without a motion by the Government pursuant to 18 U.S.C. § 3553(e) is an offense level of 19 plus a consecutive 120 month sentence under the mandatory

minimum sentence dictated by 18 U.S.C. § 924(c)(1)(A)(iii). According to the U.S.S.G. Sentencing Table, not considering the Government's motion, the applicable sentencing range for the crimes to which Defendant pled is between 150 and 157 months.

As agreed by the parties in the plea agreement, if the Court grants the Government's motion under 18 U.S.C. § 3553(e), the applicable guidelines offense level is 26 which, under the Sentencing Table, prescribes a sentence between 63 and 78 months. The downward departure from the mandatory minimum 120 months under such scenario would be a 42 to 57 month decrease. *See United States v. Auld*, 321 F.3d 861 (9th Cir. 2003).

Additionally, if the Court grants both the Government's motions under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, the Court can further depart, downward, from the offense level of 26. Such a further departure, in consideration of the factors set forth in §5K1.1, would fully recognize the substantial assistance provided by Defendant Lionel Borja in the apprehension and prosecution of Norman Kapileo, and the prosecution of Jason Ruluked, and the extradition from Vietnam and prosecution, albeit unsuccessfully, of co-conspirator Vann Le. As recognized by former Assistant United States Attorney Patrick Smith in a letter to the Court dated September 13, 2005, "The investigation and prosecution of the City Trust Bank robbery was a significant achievement for both local enforcement and the Federal Bureau of Investigation. None of it would have been possible absent Borja's commitment to cooperate and testify truthfully."

5.    The Need To Avoid Unwarranted Disparities: The voluntary cooperation and assistance of co-conspirators in bringing to light, and to justice, the criminal activities of third parties is an invaluable tool to law enforcement as is recognized by Congress in 18 U.S.C. § 3553(e) and by the Sentencing Commission through § 5K1.1 of the Guidelines. The Court's measured consideration of the extent and value of defendants' cooperation with authorities helps facilitate the continued viability of such law enforcement mechanism. The consistent recognition and application of the guiding factors of § 5K1.1 which recognize the contribution made by defendants to the investigation,

1 apprehension and prosecution of other offenders ensures that defendants have at least some

2 predictability that their honest, good faith efforts will not go unnoticed or unrewarded.

3      This Court, has in the past recognized the substantial assistance of admitted criminals in the

4 prosecution of co-conspirators and has sentenced the cooperating defendants accordingly.  For

5 example, the sentence meted out by the Court to Michael Wilson in the Bank of Saipan case was

6 substantially below that of the other defendants in that case.  Wilson, looking at a sentence between

7 121 and 151 months, ultimately received a sentence of around 36 months.  His co-defendants

8 received between 10 and 20 year sentences.  The Court, recognizing that the prosecution of Bert

9 Douglas Montgomery, DuSean Berkich and Thomas Aldan was substantially aided by the

10 cooperation and testimony of Wilson, handed down a sentence in consideration of Wilson's

11 substantial assistance.

12      Here, Lionel Borja's substantial assistance with regard to the City Trust Bank robbery and

13 potentially other investigations deserves the consideration this Court has shown in the past under

14 similar circumstances.

15 6.    <u>The need to provide restitution to any victims of the offense</u>:  Presently, Lionel Borja is 26

16 years old. PSIR ¶ 61.  Mr. Borja is a high school graduate and, since his incarceration in February of

17 2003 has received substantial experience with various vocational skills to which Mr. Borja could put

18 to good use upon his release.  PSIR ¶¶ 16 & 78-79.  In prison, Mr. Borja will not be able to work to

19 provide the level of restitution that he would otherwise be able to provide if he were released and

20 were able to obtain a job based on the skills he has acquired to date.

21

22

23      **<u>Application of the §5K1.1 Departure Factors to the Facts of this Case</u>**

24 (1)    <u>The Court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered</u>:

25

26      The sentencing in this matter was postponed several times, in large part to enable the Court

27

1    to have the benefit of observing Mr. Borja testify about the matters for which he provided substantial

2    assistance to the Government. As the Court is aware, and as discussed in the Letters of former AUSA

3    Patrick Smith and AUSA Timothy E. Moran (relating to the Court the statements of AUSA John

4    Rice), Mr. Borja's early, complete and truthful cooperation was the key factor in the Government's

5    obtaining the convictions of Norman Kapileo and Jason Ruluked, and obtaining the surrender of

6    Vann Le by Vietnamese officials to the Federal Bureau of Investigation.  Although Vann Le was

7    eventually acquitted by a jury, Mr. Borja provided substantial and truthful testimony in Vann Le's

8    trial, testimony which the Court had the opportunity to observe first hand.

9    (2)    The truthfulness, completeness, and reliability of any information or testimony provided by
10    the defendant:

11    Additionally, as the other evidence presented at the trial of Vann Le corroborated, Defendant

12    Borja's testimony was consistent with his many prior accounts of the full events of the City Trust

13    Bank robbery and the other criminal activities about which Mr. Borja had varying degrees of

14    knowledge. Mr. Borja's testimony was consistent with the statements he provided the U.S. Probation

15    Office a year earlier.  And the Government's motions under 18 U.S.C. § 3553(e) and §5K1.1 of the

16    Federal Sentencing Guidelines confirms that the Government, to whom Mr. Borja gave substantial

17    information, was satisfied that Mr. Borja's cooperation, including his trial testimony, was truthful,

18    complete and reliable.

19    (3)    The nature and extent of the defendant's assistance:

20    As discussed above, and highlighted by a quote from the letter of former AUSA Patrick Smith

21    to the Court, "The investigation and prosecution of the City Trust Bank robbery was a significant

22    achievement for both local enforcement and the Federal Bureau of Investigation.  None of it would

23    have been possible absent Borja's commitment to cooperate and testify truthfully."

24    (4)    Any injury suffered, or any danger or risk of injury to the defendant or his family resulting
25    from h is assistance:

26    As the Court will recall, Mr. Borja's indictment, arraignment and change of plea were all under

27

1  seal pending the arrest of co-defendant Norman Kapileo, and Mr. Borja's transfer to the detention

2  facility in Guam. This was done based on the joint request from the Government and Lionel Borja's

3  counsel based on tangible concerns for Mr. Borja's personal safety should it have become known to

4  Norman Kapileo that Lionel was cooperating with the Government before Mr. Kapileo was in custody

5  and geographically separated from Lionel Borja. As AUSA John Rice recognized: "Despite the

6  dangers and stigma of cooperating in a small community like Saipan, Lionel did so unhesitatingly.

7  Lionel's standing in the community and his commitment to change after them, are factors the Court

8  should consider in fashioning a fair sentence."

9  (5)    The timeliness of the defendant's assistance:

10      Both former AUSA Smith and AUSA Rice who were present during the initial interview with

11  Mr. Borja and who had substantial involvement in the City Trust Bank robbery case confirm that

12  defendant's assistance was timely and complete, and absent Mr. Borja's cooperation, prosecution of

13  the individuals responsible for that robbery and other criminal activity would not have been possible.

14                    **Defendant's Requested Downward Departure**

15      In light of the above, sentencing factors, and in accord with the motions filed by the

16  Government under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 based on Defendant Borja's substantial

17  assistance to the Government in prosecuting various criminals, Defendant requests the favorable

18  consideration of the Court and suggests that a six (6) point downward departure from the Sentencing

19  Guidelines offense level of 26 (which offense level takes into account the discharge of a firearm in

20  the commission of a crime) is the appropriate sentence for Defendant here. An offense level of 20

21  with a Criminal History level of 1 would suggest that the Court impose a sentence of between 33 and

22  41 months. Defendant would suggest that the low end of that range of sentence would be applicable

23  in this case and asks for a sentence of 33 months.

24

25

26

27

## Proposed "Statement of Reasons Pursuant to 18 U.S.C. § 3553(c)"
### for sentence below guideline range

Required under § 3553(c) (even after *Booker*) is specific statement of reasons, in writing, and included in the judgment and commitment order, for the Court's departure from the Federal Sentencing Guidelines. *See also* the Commentary to U.S.S.G. § 5K1.1.

Accordingly, for the reasons stated above, Defendant Lionel Borja proposes the following statement for adoption by the Court to justify the downward departure requested herein and warranted hereby:

The Court hereby finds that the following factors justify a sentence that is eighty seven (87) months below the statutory minimum sentence required by 18 U.S.C. § 924(c)(1)(A)(iii), and a six (6) level downward departure from the recommended sentencing guidelines offense level of 26[3] to a final guidelines offense level of 20:

1.    In this matter, Lionel Borja provided substantial assistance to the Government in the investigation and the prosecution of the individuals involved in the City Trust Bank robbery and other criminal activities leading to the extradition from Vietnam of a Federal fugitive to stand trial in Saipan, and other than Mr. Borja, to the conviction of two other individuals;

2.    Mr. Borja's substantial assistance, cooperation and testimony was timely, truthful, reliable and complete;

3.    Mr. Borja's assistance was made at the risk of his personal safety from known, career criminals;

---

[3] It should be noted that this figure includes a one level downward departure, based on a motion that should be made by the Government at sentencing, pursuant to U.S.S.G. § 3E1.1(b) based on defendant's timely assistance to authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

4.  Mr. Borja's involvement in criminal activities and related drug abuse spanned a little over one and one-half years and is not representative of Mr. Borja's behavior neither prior to the time he became involved with the individuals involved in the City Trust Bank robbery and other related criminal activity, nor with Mr. Borja's attitude and behavior since he began cooperating and assisting federal and local law enforcement in December 2002;

5.  Since Defendant Borja's incarceration in February 2003 on the charges and eventual plea of guilty to bank robbery and aiding and abetting the discharge of a firearm in commission of that crime, Mr. Borja has, by all accounts, demonstrated a marked degree of responsibility and rehabilitation, due in no small part his distance from the individuals that contributed to Mr. Borja's involvement with drugs and criminal activity, and due also to Mr. Borja's own commitment to his rehabilitation;

6.  By all accounts, Mr. Borja does not pose a threat to the community and will likely, when released, reintegrate quickly into this community and become a responsible member of society;

7.  Mr. Borja is a high school graduate who, in more than 31 months of detention pending sentencing, has already begun to learn new trades which include clerical skills and working with computers;

8.  A substantial downward departure in this case is warranted to recognize Mr. Borja's substantial assistance and cooperation to law enforcement personnel, and to recognize the substantial steps Mr. Borja has made towards his own rehabilitation and reintegration into society;

9.  Justice, here, would not be served by a long prison sentence that would at the very least frustrate, and would most likely undo, Mr. Borja's rehabilitation, nor would it recognize the roll that cooperation plays in effective law enforcement techniques.

<u>Conclusion</u>

For the foregoing reasons, Defendant Lionel Borja respectfully submits that a sentence of thirty three (33) months is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a) and is the appropriate and warranted recognition under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 of Defendant's substantial assistance to law enforcement authorities in the apprehension and prosecution of other parties for various criminal conduct.

Respectfully submitted this 20th day of September, 2005.


_____
MARK B. HANSON

First Floor, Macaranas Building
Beach Road, Garapan
PMB 738, P.O. Box 10,000
Saipan, MP 96950
Telephone:    (670) 233-8600
Facsimile:    (670) 233-5262

Attorney for Lionel Borja



# DEPARTMENT OF CORRECTIONS

*Depattamenton Mangngurihi*

P.O. Box 3236

Hagatna, Guam 96932



September 5, 2005

**Felix P. Camacho**
*Governor*

**Kaleo S. Moylan**
*Lt. Governor*

**Robert D. Camacho**
*Director, Acting*

**Francisco B. Crisostomo**
*Warden*

**Michael P. Quinata**
*Chief Parole Officer*

**Joseph T. Afaisen**
*Administrator, Acting
CCSD / RSAT / Forensic*

**Luis M. Paulino**
*Administrative Services Officer*

**MEMORANDUM**

**To:**   The Honorable Judge, Alex R. Munson
       U.S. District Court Of the Northern Marianas,

**Via:**  Sgt. Antone F. Aguon, HDF Commander
       Maria C. Cruz, U.S. Probation Officer

**From:** Corrections Officer I

**Subject:** Security Evaluation

**Reference:** Federal Detainee, Lionel Borja

Provided to you for your review and consideration is a Security Evaluation on Detainee Lionel Borja since his incarceration at the Hagatna Detention Facilities on March 19, 2003 and based on my observation of Borja since my assignment to the Detention Unit.

Borja was a member of the Special Projects Crew for the HDF, from October 5, 2003 up to November 26, 2004. This work detail was under the supervision of D/L J.G. Quidachay. Borja performed his responsibilities diligently and without incident. Borja expressed interest in the different trade skills offered in this detail. His eagerness to learn expressed a willingness to rehabilitate. On November 26, 2004 Lionel was given the opportunity to perform a different type of work. He was chosen for detail in the Operations Office. To become a detail in this section of the facility you must gain a level confidence with security staff and no history of negative reports reflecting security risk. This detail involved a different mode of work, which Lionel was not accustomed to doing. Lionel proved well and quickly gained basic clerical and computer skills. Detainee Borja takes great pride in not only performing, but also knowing he is a contributing factor to the betterment of the program. In addition, I have observed Borja to be very active with cleaning his assigned housing unit without instruction. He is a volunteer and an example to fellow inmates/detainees.

Borja has remained incident free and I have no knowledge of any infractions of rules by Borja. He is considered by this officer to be a role model for the other inmates/detainees to emulate while incarcerated.

In closing, despite the seriousness of his charges, I feel that Detainee Lionel Borja does not pose a security risk and I would strongly support the leniency of this court during his sentencing as deemed appropriate by your Honor.

Thomas SA Chaco
Corrections Officer I

Tel. No.: 475-6222 / 6298/473-7022 / 7027
Fax. No.: 473-7024

RECEIVED by fax
9/16/05 1:42 p.m.



# KING & SPALDING LLP

1185 Avenue of the Americas
New York, New York 10036-4003
www.kslaw.com

Patrick J. Smith
Direct Dial: 212-556-2123
Direct Fax: 212-556-2222
psmith@kslaw.com

September 13, 2005

The Honorable Alex R. Munson
Chief Judge
United States District Court for the
  Northern Mariana Islands
Horiguchi Building
Saipan, MP 96950

**Re: Lionel Borja**

Dear Judge Munson:

I am writing with regard to the upcoming sentencing of Lionel Borja, who pleaded guilty to a cooperation agreement with the government in connection with the City Trust Bank robbery case. As Your Honor may recall, I was the AUSA responsible for the prosecution of Borja and his co-defendants prior to my departure from the U.S. Attorney's Office. I understand the government will be making a downward departure motion at Borja's sentencing. Please consider this letter in determining the extent of any downward departure.

Borja's cooperation began with his voluntary appearance at the U.S. Attorney's Office for an interview. No charges were pending; no arrest was imminent. Borja immediately provided a complete account of the robbery and other unlawful activity in which he and others had participated. From that first meeting, I had no reservations about Borja's credibility and would have called him as a government witness without hesitation. Indeed, I was impressed by Borja's desire to cooperate as a means to break with his criminal past.

The investigation and prosecution of the City Trust Bank robbery was a significant achievement for both local enforcement and the Federal Bureau of Investigation. None of it would have been possible absent Borja's commitment to cooperate and testify truthfully. As a result, Norman Kapileo, a violent recidivist, is serving a lengthy federal prison sentence.

Borja's truthful cooperation also permitted the government to prosecute Jason Ruluked on obstruction of justice and false statement charges. Ruluked's bizarre false confession seriously impeded the investigation prior to the government's meeting with Borja and exposed

ATLANTA • HOUSTON • LONDON • NEW YORK • WASHINGTON, D.C.

The Honorable Alex R. Munson
September 13, 2005
Page 2

the government to the risk of proceeding on the basis of perjured testimony. Borja credibly explained that Ruluked had nothing to do with robbery – information that Ruluked corroborated by admitting his lies and pleading guilty.

The adverse result at the Vann Le trial, while regrettable, should not be viewed as diminishing the quality of Borja's cooperation. A case built on accomplice testimony always brings with it an increased risk of acquittal. As I understand it, Borja delivered on his promise to tell the truth about the robbery. He deserves the benefit of his bargain despite Le's acquittal.

Borja committed a serious offense that ordinarily demands a long prison term. The circumstances of Borja's early and complete cooperation, however, provide an ample basis for the granting of the government's motion.

Please feel free to contact me if the Court has any questions that my familiarity with the early phase of the prosecution might be able to answer.

Respectfully yours,

Patrick J. Smith

cc:    Mark Hanson, Esq.
       AUSA Timothy E. Moran

U.S. Department of Justice

United States Attorney's Office
District of the Northern Mariana Islands
Assistant U.S. Attorney Timothy E. Moran

P.O. Box 500377
Saipan, MP 96950

TEL (670) 236-2982
FAX (670) 236-2985

September 20, 2005

The Honorable Alex R. Munson
Chief Judge
District Court of the Northern Mariana Islands
Horiguchi Building
Saipan, MP 96950

**RECEIVED**

SEP 2 0 2005

Clerk
District Court
For The Northern Mariana Islands

Re:    United States v. Lionel Borja, Cr. No. 03-00001

Dear Judge Munson:

I write regarding the upcoming sentencing of Lionel Borja. As your Honor is aware, although I tried the case against Varn Le, I was the last of several Assistant U.S. Attorneys to work on this case. I want to bring to your Honor's attention the sentiments of the other attorneys who prosecuted Mr. Borja. First, you should have received a letter from Patrick Smith.

Second, John Rice recently gave me the following information. In his own words: "In a rather unusual set of circumstances, I know Lionel Borja as both a member of the football team I coached and a criminal defendant in a case I supervised. As a football player, Lionel was a hard-working and well-respected member of the team. I recall several occasions when Lionel stayed after practice to work with other players in developing their skills. Needless to say, I was shocked and saddened when I learned of Lionel's criminal activity. I was present when Lionel was first debriefed and he literally cringed with shame and embarrassment at the prospect of having to confront his failures in front of 'Coach Rice.' Nevertheless, he forthrightly and candidly admitted his crimes and agreed to cooperate fully. Unlike many cooperators, his story did not come out piecemeal, but was provided in full from the outset. Despite the dangers and stigma of cooperating in a small community like Saipan, Lionel did so unhesitatingly. Lionel's standing in the community and his commitment to courage after them, are factors the Court should consider in fashioning a fair sentence."

On behalf of this Office, I hope that your Honor will consider these comments.

Sincerely,

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and the NMI

By: _____
TIMOTHY E. MORAN
Assistant U.S. Attorney

cc:    Mark Hanson, Esq.
       Assistant U.S. Attorney John Rice