MARK B. HANSON, ESQ.
First Floor, Macaranas Building
Beach Road, Garapan
PMB 738 P.O. Box 10,000
Saipan, Mariana Islands 96950
Telephone: (670) 233-8600
Facsimile: (670) 233-5262

Attorney for *Defendant Lionel Borja*

F I L E D
Clerk
District Court

OCT 1 9 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LIONEL BORJA,<br><br>Defendants. | CRIMINAL CASE NO. 03-00001-003<br><br>APPLICATION FOR CERTIFICATION OF EXCESS COMPENSATION PURSUANT TO 18 U.S.C. §3006A (d)(3) |

COMES NOW, Mark B. Hanson, court-appointed counsel for Defendant Lionel Borja ("Defendant") in the above matter, and hereby applies for certification of excess compensation to counsel pursuant to 18 U.S.C. § 3006A (d)(3). This Application is for excess compensation in the amount of $911.00.

FACTS AND PROCEDURAL HISTORY

The Court may take judicial notice of the following facts:

On January 30, 2003, the undersigned was appointed to defend Mr. Lionel Borja pursuant to the Criminal Justice Act of 1964, 18 U.S.C. § 3006A, because the Defendant was found to be financially unable to obtain adequate representation.

On or about February 5, 2003, Defendant Borja, along with two other defendants, was charged by indictment with the following crimes:

| | | |
|---|---|---|
| Count I – | HOBBS ACT ROBBERY CONSPIRACY: That on or about April 12, 2003, Vann Le, Norman Kapileo and Lionel Borja conspired to commit the armed robbery of the City Trust Bank branch in Gualo Rai, Saipan, Commonwealth of the Northern Mariana Islands ("CNMI"), its employees and customers, in violation of Title 18, United States Code, Section 1951(b)(3). | |
| Count II – | HOBBS ACT ROBBERY: That on or about April 12, 2003, Vann Le, Norman Kapileo and Lionel Borja robbed, by means of actual and threatened force, including the discharge of a firearm, the City Trust Bank branch in Gualo Rai, Saipan, CNMI, its employees and customers, of approximately $8,649.50 thereby obstructing, delaying and affecting commerce in violation of Title 18, United States Code, Section 1951(b)(3). | |
| Count III – | USING AND CARRYING A FIREARM DURING A CRIME OF VIOLENCE: That on or about April 12, 2003, Vann Le, Norman Kapileo and Lionel Borja, during and in relation to a crime of violence for which defendants may be prosecuted in a court of the United States, namely Hobbs Act Conspiracy and Hobbs Act Robbery charged in Count One and Count Two of this Indictment, used and carried a firearm, and, in furtherance of such crimes, possessed such firearm, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) & (2). | |

Prior to Defendant Borja's indictment, Defendant began cooperating with the Government in the investigation of the City Trust Bank robbery and other criminal activity and, on March 13, 2003, Defendant Borja entered into a plea agreement with the Government whereby Defendant agreed to plea guilty to Counts One and Three of the Indictment and Defendant Borja agreed to full cooperation with law enforcement personnel.

On March 15, 2003, the Court accepted Defendant's plea to Counts One and Three and set

a status conference for September 2003. It was the expectation of the Government and Defendant that Defendant would testify at a trial, if necessary, against his co-defendants in this matter. Accordingly, and due to the difficulty of getting co-defendant Vann Le back to Saipan to answer to the indictment, the status conference at which the Court would schedule Mr. Borja's sentencing was continued several times in 2003 and 2004.

By stipulation and order on July 1, 2004, notwithstanding that Vann Le had still not been brought back to Saipan, Mr. Borja's sentencing was scheduled for September 14, 2004 and a presentence investigation was ordered. Thereafter, upon obtaining prior approval from the Court, the undersigned traveled to the Territory of Guam where Mr. Borja was detained to prepare for and participate in the interview of Mr. Borja as part of the Probation Officer's presentence investigation.

In August 2004, a chambers conference was held to discuss rescheduling Mr. Borja's sentencing in light of the fact that Vann Le was finally being brought to Saipan to stand trial and, on August 10, 2004, the Court took the September 14, 2004 sentencing off-calendar and set a status conference for February 11, 2005. Then, in order to allow Mr. Borja to testify against Vann Le prior to Mr. Borja's sentencing, that status conference was again continued two more times.

Finally, on August 16, 2005, the trial of Vann Le commenced and Mr. Borja testified as a witness for the Government therein.

On September 22, 2005, two years and seven months after Lionel Borja's change of plea hearing, Mr. Borja was sentenced by the Court to seventy (70) months imprisonment.

## COMPENSATION LIMITS AND EXTENDED OR COMPLEX REPRESENTATION

Section 3006A (d)(2) of the Act provides maximum amounts for compensating appointed counsel. The maximum statutory amount an attorney may receive for representing an indigent defendant charged with a felony is now $7,000.00. *See also Guidelines for the Administration of the Criminal Justice Act and Related Statutes* ("CJA Guidelines") §§ 2.22B(1) (i) and (2)(i) (The Omnibus Appropriations Act, Fiscal Year 2005, included as part of Pub. L. No. 108-447, effective

December 8, 2004, amended subsection (d)(2) of the CJA to increase the case compensation maximum amounts for attorneys.).

As indicated in CJA Form 20 and the worksheets submitted herewith, the undersigned seeks total compensation that is above the statutory limit. Specifically, the undersigned is seeking compensation that exceeds the statutory limit by $911.00.

However, pursuant to § 3006A(d)(3) of the Act, the statutory maximum may be waived, and payment in excess of the ceiling may be made, for extended or complex representation if additional payment in necessary to provide fair compensation to the appointed attorney. As explained in the CJA Guidelines, the CJA places limitations on the *general* authority of presiding judicial officers to unilaterally approve attorney compensation. CJA Guidelines § 2.22 B(1)(i). Payments above case compensation limits may be authorized when certified by the presiding judicial officer and approved by the chief judge of the circuit. *Id*. The chief judge of the circuit is permitted to delegate this approval authority to another active circuit judge. *Id*. Presiding judicial officers should certify excess compensation payments to counsel whenever in their judgment the case involves extended or complex representation and the amount certified is necessary to provide fair compensation. *Id*.

Case compensation limits apply only to attorney fees. There is no limit on the presiding judicial officer's authority to approve the reimbursement of expense of counsel . . . . CJA Guidelines § 2.22B(1)(i).

**Waiving Case Compensation Maximums:**

> Payments in excess of CJA compensation maximums may be made to provide fair compensation in cases involving extended or complex representation when so certified by the court or United States magistrate judge and approved by the chief judge of the circuit (or by an active circuit judge to whom excess compensation approval authority has been delegated).
>
> In determining if an excess payment is warranted, the court or United States magistrate judge and the chief judge of the circuit (or an active circuit judge to whom excess compensation approval authority has been delegated) should make a threshold determination as to whether the case is either extended or complex. If the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case, the case

is "complex." If more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings, the case is "extended."

After establishing that a case is extended or complex, the approving judicial officer should determine if excess payment is necessary to provide fair compensation. The following criteria, among others, may be useful in this regard: responsibilities involved measured by the magnitude and importance of the case; manner in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee.

CJA Guidelines § 2.22B(3). *See also United States v. Diaz*, 802 F. Supp. 304, 307 (C.D. Cal. 1992).

In *United States v. Cook*, 628 F. Supp. 38 (D. Colo. 1985), the Court considered whether a drug conspiracy case warranted excess compensation. The Court noted that the ultimate goal to be achieved under § 3006A(d)(3) is fair compensation for counsel. *Id.* at 41. The *Cook* case lasted more than six months. *Id.* Accordingly, the court there found the case to be complex and that it fit within the definition of extended representation. *Id.* The Court found that an excess award was necessary to provide the appointed attorney with fair compensation. *Id.*

In *United States v. Bailey*, 581 F.2d 984 (D. C. Cir. 1978), complex representation was defined as referring to the intricacies of the case and their corresponding call on counsel's intellectual resources. The court found that the Sixth Amendment guarantees that all criminal defendants are to be represented by effective legal counsel- counsel who are reasonably diligent, conscientious and competent. *Id.* at 988. This and other constitutional guarantees represent the cornerstone of the American criminal justice system and ensure that the process is fundamentally fair. *Id.*

In any case in which the total compensation claimed is in excess of the statutory case compensation maximum, counsel shall submit with the voucher a detailed memorandum supporting and justifying counsel's claim that the representation given was in an extended or complex case, and that the excess payment is necessary to provide fair compensation. CJA Guidelines § 2.22C(2).

DISCUSSION

At the time of Mr. Borja's sentencing on September 22, 2005, this matter, along with the related miscellaneous case in which the undersigned was initial appointed (pre-indictment case), had been pending in this Court for more than two and one-half years.

Prior to appointment of counsel in this matter on January 30, 2003, Defendant Borja had been meeting, unrepresented with the Government, including the AUSA's assigned to the case and agents of the Federal Bureau of Investigation. Since as early as December 2003, despite being represented by counsel in unrelated criminal proceedings in the local court, Defendant Borja admitted to and gave substantial details of his involvement in the robbery of the City Trust Bank without the assistance and advice of counsel. Accordingly, during the pre-indictment portion of the undersigned's representation in this matter, counsel spent a fair amount of time coming up to speed on what had transpired and in researching issues related to the voluntariness of Mr. Borja's cooperation and issues of possible suppression. The undersigned estimates that approximately 12.5% of the attorney time billed in this matter was for pre-indictment work.

That suppression research continued post-indictment and it was also necessary to review, very closely, the post-*Apprendi* developments in the law relating to sentencing factors, given the allegations in this case that Defendant aided and abetted in the discharge of a firearm in commission of the robbery of City Trust Bank. That post-indictment research, and the continuing negotiations related to Defendant Borja's eventually guilty plea and cooperation agreement, accounted for more than 27.5% of the total fees claimed herein.

It was, however, the post-guilty plea cooperation and sentencing preparation work (60% of the total fees billed) that constitutes the majority of the work for which compensation is claimed hereunder, and the post-plea work is the primary reason for counsel exceeding the statutory maximum amount of compensation. In the more than two and one half years following Defendant Borja's guilty plea on March 15, 2003 before his sentencing on September 22, 2005, among much

other work, it was necessary for appointed counsel to travel to Guam for two days to meeting with the Defendant and the U.S. Probation Officer as part of the Probation Office's presentence investigation, to meet several times with Defendant Borja and with the Government to prepare for Defendant's testimony against co-defendant Vann Le, and to attend the first day of trial at which Mr. Borja testified. Additionally, Mr. Borja's personal history and circumstances, the fact that he was facing a 10 year mandatory minimum for discharge of a firearm, and the Government's motions under 18 U.S.C. § 3553(e) and § 5K1.1 of the Federal Sentencing Guidelines warranted additional research and the preparation of an extensive sentencing memorandum, in addition to meetings with Mr. Borja and members of his family in preparation for his sentencing.

Here, the complexity of the issues present in the first ever bank robbery in the Commonwealth of the Northern Mariana Islands, the years it took to bring all of the defendants to trial, and the attention warranted at sentencing all merit this Court's consideration of a waiver of the statutory maximum fee and the certification of this Application for Excess Compensation.

## NO NOTICE TO THE UNITED STATES

Appointed counsel brings this matter before the Court without notice to the United States in its capacity as a party to the case nor is the District Court required to notify the United States upon receipt of a request *In re Baker*, 693 F.2d 925, 927 (9th Cir. 1982). The Criminal Justice act does not contemplate nor provide for any such adversary hearing. It excludes the government from participation in the Act's compensation and reimbursement arrangements. *Id. See also United States v. Feldman*, 788 F.2d 625, 626 (9th Cir. 1986).

## CONCLUSION

Accordingly, the undersigned respectfully requests this Court to grant full compensation requested in the final billings of counsel submitted to the Court for payment.

Respectfully submitted this 18th day of October, 2005.

_____
MARK B. HANSON

First Floor, Macaranas Building
Beach Road, Garapan
PMB 738, P.O. Box 10,000
Saipan, MP 96950
Telephone:	(670) 233-8600
Facsimile:	(670) 233-5262

Attorney for Defendant Lionel Borja